HARRY MCMURTRY, executor, &c., complainant-appellant,

*v.*

ANNIE BOWERS et al., defendants-respondents.

[Submitted July 7th, 1919. Decided March 1st, 1920.]

1. A *bona fide* purchaser of a mortgage for valuable consideration is entitled to enforce it as against any latent equities in favor of third persons against the mortgagor.

2. A married woman may mortgage or pledge her property to secure the debt of her husband or any other person; but such mortgage will not be valid against her creditors in the hands of a mortgagee who at the time of taking it had notice or knowledge of her previous indebtedness.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Backes, whose opinion is reported in *90 N. J. Eq. 103.*

*Mr. Edward P. Johnson, Jr.,* and *Mr. Hugh K. Gaston,* for the appellant.

*Mr. George E. Clymer,* for the respondents Bowers, Allen W. Rose and William Prout.

*Messrs. Raymond, Clancy & Marsh,* for the respondent Newark Trust Company.

The opinion of the court was delivered by

PARKER, J.

The basic facts are fully stated in the opinion of the vice-chancellor, but must also be dealt with here. The bill was an attack by a judgment and execution creditor named Catharine Bowers, upon a mortgage made by the defendant Annie Bowers and her husband, Henry, as in fraud of complainant's rights. Catharine died pending the litigation and her executor was substituted.

The mortgage in question was made to the defendant Rose, whom the vice-chancellor found to have been at the time a *bona fide* creditor, not of Annie, but of her husband, Henry, and as he also found, not as security for, but in payment of Henry's debt. The vice-chancellor also found as a fact that Rose at the time of taking the mortgage as such payment was unaware of the fact that Annie owed the complainant, and while he conceded that if Rose had known that Annie was already indebted, the good faith of the transaction would have been very questionable, he upheld it on the express finding that Rose did not know of the prior indebtedness. The mortgage being thus adjudged good in Rose's hands, was likewise held good in the hands of respondent Prout as assignee, although Prout knew all about Annie's indebtedness, the fact being that when the mortgage was made, Annie had been sued by Catharine Bowers

for this debt in the Somerset circuit, had employed Prout to file a plea, which he did, that the mortgage was made while the cause was at issue and awaiting trial, and that afterwards when the cause was called for trial, Annie defaulted and Catharine had judgment. In this aspect the vice-chancellor relied on the rule that a *bona fide* purchaser for value without notice of fraud can transfer a good title to a subsequent purchaser aware of the fraud.

Prout did not record his assignment for some seven years, and at the end of that period used the mortgage as collateral security in borrowing from the respondent Newark Trust Company. That company concededly was unaware of any equity of Catharine Bowers. By this time, it is true, she had well nigh exhausted all purely legal remedies for the recovery of her debt. She had obtained judgment, issued execution and caused a levy to be made on the property covered by the mortgage, which consisted of Annie's undivided interest in land subject to an unassigned dower right and of which the dowress was in possession; and had bought in Annie's interest at a sale under her execution; but, of course, could not enter into possession as against the dowress. The trust company had the title of the land examined down to the making of the mortgage, and the title to the mortgage examined from that onward. There was nothing in the record or the papers themselves, to put an intending assignee of the mortgage on notice of Catharine's equity as against Annie. The mortgage was recorded on April 27th, 1910; the judgment was not entered until September 27th, 1910; and the bill in this cause was not filed until after the assignment to the bank was put on record. As already noted, Catharine could not enter into possession of the land under her execution sale because of the outstanding possession of the dowress, so there was no notice to the bank, either actual or constructive.

The vice-chancellor, while remarking that almost all the circumstances of the case gave rise to grave suspicion of fraud, held that they were satisfactorily explained, and upon his findings that Rose was a *bona fide* mortgagee for value paid, that he passed a good title in consequence to Prout, and that the trust

company was without blame or fault in the matter, he upheld the mortgage and assignments, and as the trust company held the mortgage only as collateral for a loan to Prout, who had an equity therein, above the amount of the loan, he dismissed the bill as to complainant; and the trust company, having prayed foreclosure by way of counterclaim, he ascertained the amount due that company, and to Prout over and above the loan, and decreed foreclosure and sale accordingly.

Our examination of the case leads us to the conclusion that the decree so far as it relates to the Newark Trust Company was right and should be affirmed. We do not agree, as will presently appear, with the result reached below as touching Rose and Prout. Notwithstanding this, however, the trust company is entitled to enforce its security under the rule that a *bona fide* purchaser for valuable consideration of a mortgage is protected against any latent equities in favor of third persons against the mortgagor. *Danbury* v. *Robinson, 14 N. J. Eq. 213.*

With respect to the defendants Rose and Prout, we reach a different result, for it is, of course, clear that Prout was fully aware of the complainant's claim, and we find that Rose was aware of it also; for in his own affidavit he deposes that he was considering the question of taking a deed from Annie and her husband of her interest in this land in satisfaction of the amount that he claimed to be due him, and was advised by counsel that a mortgage was preferable because "the Bowers" were indebted to other creditors at the time and if he took a deed it would only amount to a mortgage in any case. This, taken with other circumstances highly suspicious in character, satisfies us that Rose knew of Annie's indebtedness before he took his mortgage; and while he might be protected if she had owed him the money, she could not, under well-recognized rules, mortgage her property for her husband's debt to the detriment of her own creditors. *Campbell* v. *Tompkins, 32 N. J. Eq. 170, 173; affirmed, 33 N. J. Eq. 362; Butterfield* v. *Okie, 36 N. J. Eq. 482.* As to her creditors, the mortgaging of her property for her husband's debt would be purely voluntary. Conse-

quently, as Rose was not protected by the doctrine of *bona fide* purchaser, the mortgage in his hands was invalid as to complainant. This being so, Prout was no better off as assignee, because he knew all that Rose did, and probably more.

The decree must be reversed as to Prout, and a decree entered in favor of complainant against him, with costs, setting aside the mortgage so far as relates to his claim or any part of the same or its proceeds. There should also be a reversal as to Rose and the two Bowers, and an award of costs against them. The trust company, as we have said, is entitled to an affirmance.

*For affirmance*—None.

*For reversal*—BERGEN, MINTURN, KALISCH, WHITE, HEPPENHEIMER—5.

*For modification*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, BLACK, WILLIAMS, TAYLOR, GARDNER, ACKERSON—9.